The next case this morning is case number 4130780 People v. Hall for the appellant, Carl Munt, for the appellee, David Manchin. Mr. Munt. May it please the court, counsel? Your honors, in this case, this case came down to a credibility battle between the state's defense witnesses who said that he was not present in Mattoon and did not participate in these offenses. In the briefs, we raised three issues in this case. However, I'm willing to discuss any of the three issues, your honors, if you would like to, but I would like to focus on issues one and three, if we could. In the first issue, the trial court restricted the defense counsel's ability to impeach Jose Morrison on his bias and his motive to testify falsely, and by completely cutting off an avenue of cross-examination, he violated the Sixth Amendment's right to confront the witness and present a defense. Jose Morrison was, for all intents and purposes, the ringleader of what occurred this day. It was his fiancée's grandparents' house. He's the one that knew that there was money. He knew. He came up with the plan. And in this case, he negotiated a plea of guilty but mentally ill, which by definition means his mental illnesses were manifesting themselves at the time this offense occurred. And that plea occurred in front of the same trial judge who was the judge in Willie's case. And before Jose was to testify, the parties were discussing how they might go about impeaching him. And after discussing the fact that he pled guilty but mentally ill, the judge asked defense counsel, do you plan on talking about the mental illness finding? And defense counsel said, yes, absolutely. And that's when the trial judge said, well, what about it is relevant? Why do we get to talk about that? And defense counsel explained that the finding of mental illness goes to Jose's credibility and the weight of his testimony in front of the jury, specifically his believability and his ability to perceive the events and recall those events in his memory. The trial court asked defense counsel if he had any expert testimony to explain these diagnoses. And defense counsel did not. However, diagnoses such as alcohol dependence and substance dependence do not need expert testimony. Every jury and every day juror has enough everyday experience to understand alcohol dependence and substance dependence and what such a diagnosis would mean to someone's credibility. It's not as esoteric as, say, bipolar or anxiety disorders or other things like that. When it comes to alcoholism and substance dependence, people have enough everyday experience with that. They don't need expert testimony to explain what that means in terms of evaluating a witness's credibility. Counsel, would you agree that that testimony came in, not the use of the word, you know, pleading guilty but mentally ill, but the drug use, schizophrenia, mental health issues, didn't it all come in through other avenues? Some, it was mentioned in some context but not in the same way. Jose, he did talk about all of the drugs he took that night, but he sort of did it in a nonchalant way of, oh, I was drinking this, took Vicodin, cocaine. He kind of made it seem like he was just having a party, that these were party drugs, as opposed to he had a chemical dependence on these things and how all of these, this cocktail of drugs would affect his perception, his memory, his ability to understand what was going on around him. And they mentioned in schizophrenia that that was by Heather who, and there was zero follow-up on it, it wasn't related to anything. And so, while some of these facts came out, because defense counsel wasn't able to link it to Jose's diagnosed mental illnesses and specifically mental illnesses that were occurring at the time of this offense, it didn't have the same effect as if defense counsel was able to point out to the jury, not only was he taking these drugs, he has a chemical dependence and was experiencing the effects of these drugs and the mental illness at the time of his offense, and you can take that into account. And there's ample case law from the state of Illinois that says habitual drug addicts are known liars. People are allowed to use their own common sense when it comes to alcoholics and drug users and how they evaluate their credibility. The bottom line is that the trial judge lumped all of these together and just said, unless you can bring an expert to explain how this is relevant, you don't get to talk about any of it. When, more likely, you should have parsed them out and recognized that some diagnoses are things that jurors have more experience with and would be able to address and understand, they wouldn't have to speculate, which is the concern that the judge was expressing. On this issue, is our standard of review abuse of discretion? Yes. That is, whether the trial court should have allowed this cross-examination or allowed the evidence of the mental illness. Yes. Yes. We're arguing that he abused his discretion and wholesale not allowing any of this to come in. If there's no further questions on that issue, I'd like to move to the third issue, the one act, one crime issue. In this case, Willie Hall received consecutive sentences for home invasion, robbery, and residential burglary. However, the Illinois Supreme Court in McClellan very clearly stated that home invasion and residential burglary are based on the same act of entering the home. In McClellan, there were a few different places where they addressed the one act, one crime. The first one involved murder and home invasion. When the court looked at those two offenses and those acts, they determined that those were not the same act. The defendant argued in that case that the setting of the fire was the act in common to both of those. And the court said that home invasion had the additional act of entering the home, which is why it was not the one act, one crime violation in that sense. What's important there is that the last serious offense in that situation, home invasion, is the one that had the additional act. So they couldn't combine home invasion into murder because we had that extra act of entering the home on the less serious offense. But when they get to home invasion and residential burglary, while home invasion has that extra act, that's the more serious offense. Residential burglary consists of one act combined with a mental state. That one act is the same act of entering the home that's in home invasion. So the fact that home invasion has an additional act is not relevant to whether residential burglary is one act, one crime with that act of home invasion. That's the difference between the two holdings of McLaurin. And respectfully, this court's decision in Price seems to ignore that distinction or not parse that distinction. As the Supreme Court pointed out in King and in Miller, the point of the one act, one crime doctrine is to punish a defendant for each of his acts, but only one time per act, not to over-punish a defendant. And in this case, if the home invasion conviction and the robbery conviction stand, as we argue they should, all of the acts, all of the elements of residential burglary are already being punished in that. The entry from residential burglary is being punished by the home invasion. The intent to commit a theft is being punished by the actual theft from the robbery. So here, the residential burglary, both elements of it are already being punished in the other two offenses. And so under the idea, the guideline of one act, one crime, to not over-punish a defendant, particularly in a case where he was given consecutive sentences, we believe that the residential burglary conviction should be vacated. Thank you, Your Honor. Thank you. You'll have rebuttal. Mr. Manchin. Good morning, Your Honors. Please accord counsel. In this case, as Justice Turner noted, the question is, did the trial court abuse its discretion in imposing the limit it did on the cross-examination of the defendant? And does the fact that there's a limitation does not per se establish a violation of the right to confrontation? The confrontation right entitles the defendant to cross-examine, but not in any which way he wants to. The trial court may establish reasonable limitations on it. And in this case, the trial court imposed reasonable limitations, saying, the fact that the defendant, that Morrison pled guilty but mentally ill in and of itself is not impeaching, because the jury doesn't even know what a guilty but mentally ill verdict means, plus the jury does not know what these multiple diagnoses mean. The defendant made no effort to parse out, to say, okay, if I can't get them all in, can I go with just one or two of these as far as establishing impeachment? Plus, as Justice White noted, the history of prior drug use, drug use in the time of this, history of blackouts, history that he had schizophrenia, was all before the jury. So that this limitation as to referring to a guilty but mentally ill did not in any way, shape, or form violate the defendant's right to confrontation. There was no showing or no offer of proof by the defendant how any of the diagnoses, there's no testimony of what drug dependency means as far as ability to perceive, ability to recollect, ability to testify, anything. There's nothing, no offer of proof as to what these various diagnoses meant. This makes this case distinguishable from the two cases cited by the defendants of, excuse me, where the trial court in those cases was presented with a history that showed that the witness, in fact, suffered blackouts when he was drinking and was drinking on the date of the offense. So that there's a direct correlation between the symptoms of the particular witness and something that affects his credibility. That is completely lacking here. All we have is a guilty but mentally ill plea, which in and of itself doesn't tell the jury much of anything because the jury doesn't know what that means, what a guilty but mentally ill verdict means. Then we have a laundry list of potential diagnoses, none of which are explained in any shape or form. So I do not believe the trial court abused discretion in limiting this cross-examination. There is simply no indication of the relevance of these particular diagnoses because there's nothing to show how this would affect his credibility as far as in terms of ability to perceive, ability to remember, or just generally speaking the claim, you know, a drug addict is per se unbelievable. Well, we have the evidence there that this guy was a drug addict even without this reference to the guilty plea. This trial court indicated through its ruling that he was aware of the law regarding this type of impeachment. So this is not a case where the trial court was ignorant of the law or misplaced the law. He says, okay, I will admit it if you can show its relevance. The defendant made no effort to establish the relevance. I think that the trial court's ruling was correct. With respect to the one act, one crime case, I believe this court was correct in its decision in Price. The argument the defendant makes today is exactly the same argument that was rejected by this court in Price. One act, one crime does not preclude multiple convictions for multiple acts even if the offenses share one act. In this case, the offenses share the act entry. But the residential burglary one had another act involved in it that was not in any way, shape, or form involved in the other of residential burglary. I believe if my memory serves, he was charged with burglary based upon entry with intent to commit a theft. So the act of beating the victim is an entirely separate act from the entry, and that act will support a separate conviction. So the entry on both is correct. Well, how do you explain people being McLaren? Well, in Price, this court discussed McLaren and said that, hey, McLaren ignores this other decision by the Supreme Court where they noted this distinction between That would be Rodriguez? Rodriguez, yes. Saying that, you know, there's a conflict between McLaren and Rodriguez, and Rodriguez directly addresses this problem of multiple acts with one act shared, and we're going to follow Rodriguez. So you would adopt the position that McLaren is inconsistent with Rodriguez, and the Fourth District then can either follow Rodriguez or follow McLaren? That's what we've done at this juncture, at least. Yes, that's what this court has done at this juncture, and I think it can, because when the Supreme Court issues decisions which are arguably inconsistent, the one that seems to make more sense with respect to the other law out there as far as regarding, you know, even before McLaren and Rodriguez, the distinction between multiple acts and multiple convictions was well established saying that, hey, you can convict on two offenses even if they share one act, as long as there's an additional act involved in the second offense. And I do not believe that the Supreme Court in McLaren meant to overturn a whole line of cases when it doesn't even discuss those line of cases in its decision. Okay, thank you. Do you have any rebuttal? Very briefly. Okay, thank you. As to the first issue, the trial court's decision was not merely a limitation on the cross-examination. He completely cut off an entire avenue of impeachment regarding Jose's mental illness. And that is what brings it to the level of the Sixth Amendment violation as opposed to merely limiting cross-examination. And as far as the offer of proof, no more of an offer of proof was needed than what counsel offered on the, particularly with the alcohol and drugs. Juries can use their common sense and understand the effects of alcoholism and a drug addict. And counsel's assertion that his mental illnesses go to his weight and his credibility is good enough in a situation where the jury can use common sense and no expert testimony would be needed. With respect to the third issue, McLaren is not inconsistent with Rodriguez in any way. In Rodriguez, they discuss multiple acts can lead to multiple convictions. And McLaren recognizes that in the first one-act non-crime analysis with the murder in the home invasion. There are multiple acts and they can support multiple convictions where the acts don't overlap. But in the second part with home invasion and residential burglary, residential burglary consists of only one act. And when that act is completely subsumed by home invasion, there's nothing left of residential burglary on which to impose a conviction. It makes it different, and McLaren spells it out, in that home invasion survives in the first instance with murder and home invasion. Home invasion was the less serious offense, and that was the one that had the extra act, the entry, that was not being punished by the murder conviction, which is why the court allowed both of them to stand. Because you can't merge the lesser in when there's this extra act out there. But when you get to the home invasion and the residential burglary, the extra act is part of the more serious offense, which is why it's okay to take the one act of residential burglary, merge that in. He's still being punished for all of the acts. But you didn't argue that it's a lesser included, right? Respectfully, it's not even into the second part of the King analysis. It's only the first part of the King analysis. Because residential burglary is only one act, we don't move to whether or lesser included. If this court disagrees and we do need to move to the lesser included analysis, yes, residential burglary would be a lesser included in this analysis, because as I pointed out before, the two elements of residential burglary are subsumed in the other convictions. And in this case, when the home invasion was completed, it would have been impossible to complete the home invasion without also committing the residential burglary in this case. And if there are no further questions? Thank you, Your Honor. I don't see any further questions. Thanks to both of you. The case is submitted and the court will stand in recess. Thank you.